## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

DEBRA L. GERHARDT,

        Plaintiff,

    vs.                            **Case No. 04-4038-RDR**

JO ANNE B. BARNHART,
Commissioner of Social
Security,

        Defendant.

_____

### MEMORANDUM AND ORDER

This is an action to review the defendant's decision to deny plaintiff's application for disability benefits and supplemental security income benefits based on disability.  Plaintiff alleges a disability onset date of November 3, 2000. Plaintiff's applications for benefits were filed on or about August 20, 2001.  A hearing before an Administrative Law Judge (ALJ) was held on July 31, 2003.  On January 20, 2004, the ALJ issued a decision denying the applications for benefits, which was affirmed by the Appeals Council and adopted by defendant.

Legal Standards

We review defendant's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Id. (quotations and citation omitted). However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988). A failure to apply the correct legal standards or demonstrate it was done is also grounds for reversal. Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996).

Plaintiff's history

Plaintiff was born in 1967. She has a high school education. Plaintiff has worked as: a negative inserter at a yearbook company; an officer manager for her ex-husband, for whom she performed telemarketing and other duties; a packer at a Frito-Lay plant; and a customer service representative for Frito-Lay. Plaintiff began to suffer back trouble while working for Frito-Lay. In 1998 she had back surgery - a laminotomy and micro-diskectomy - by Dr. Michael Smith. She returned to work as a packer. She experienced more back discomfort in 1999 and sought medical care from Dr. Smith. She was eventually returned to light duty. This was the customer service representative position. She left that work on November 3, 2000, her alleged disability onset date. She was pregnant at the time.

The ALJ's decision

The ALJ found that plaintiff has the "severe impairments of degenerative disc disease of the lumbar spine and an abnormal acromioclavicular joint of her non-dominant left upper extremity." (Tr. 19).  He determined that her impairments do not meet or equal the severity of an impairment in the Listing of Impairments in Appendix 1 to Subpart P of the regulations. He concluded that plaintiff's complaints of total disability were not fully credible.  Finally, he determined that plaintiff could perform light work such as that done in her past work as a customer service associate and as an office manager.

The ALJ's decision will be described further as we discuss plaintiff's arguments to reverse the decision to deny her applications for benefits.

Plaintiff's arguments

Plaintiff makes two arguments in this action.  Her first argument is that the ALJ improperly concluded that plaintiff could perform her past relevant work.  More specifically, plaintiff asserts that the ALJ failed to explicitly determine the actual demands of plaintiff's past employment and then compare plaintiff's residual functional capacity with those demands.

During the administrative hearing, the ALJ asked a vocational expert to characterize plaintiff's past work.  The

vocational expert said:  that plaintiff had worked as a customer service representative and that this was sedentary, semi-skilled labor; that plaintiff had worked as a packer and that this was light, unskilled labor; that plaintiff had worked as an office manager and that this was typically sedentary, skilled work in the national economy, although plaintiff had described it as medium labor as plaintiff had performed it; that plaintiff had worked as a sewing machine operator and that this was light, semi-skilled labor; and that plaintiff had worked as a negative inserter at a yearbook publishing company, which was sedentary, unskilled labor. (Tr. 248).  Plaintiff's counsel at the hearing did not contest the vocational expert's characterization of plaintiff's past work.  Id.    The ALJ asked the vocational expert to assume that plaintiff could stand or walk for no more than 15 minutes at a time; that she could sit for up to one hour at a time; and that she could kneel, crawl, squat or stoop on a limited basis or not at all.  With these limitations in mind, the vocational expert testified:  that plaintiff could perform the job of customer service representative as she performed it and as it is typically performed; that plaintiff could perform the job of office manager as it's typically performed, but not as plaintiff performed it; and that plaintiff could perform the job of negative inserter as it is typically done and as

4

plaintiff described it.  (Tr. 264-65 & 267).

Plaintiff's argument concerns step four of the five-step sequential evaluation process for determining whether benefits should be awarded.  Plaintiff is not working (step one); she has a medically severe impairment (step two); and her impairment does not meet the listing of impairments which, under the regulations, entitle a claimant to benefits (step three).  At step four, there are three phases of analysis:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work.  In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these phases, the ALJ must make specific findings.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).

The ALJ found in this case:

> [T]he claimant is limited to work at the light exertional level as defined by the regulations.  She is limited to only occasional kneeling, crawling, stooping and squatting as that term is also defined by the regulations.  The claimant is further limited to only occasional overhead reaching with her non-dominant left upper extremity. She can stand/walk 15 minutes at a time and sit for one hour at a time.
>
> 7.  The vocational expert testimony shows the claimant can return to her past relevant work as a customer service associate as she

5

> performed it and as generally performed in
> the national economy, and as a office
> manager, as generally performed in the
> national economy.

(Tr. 19).

With these findings and others made in his written opinion, the ALJ made an evaluation of plaintiff's residual functional capacity. Through the testimony of the vocational expert and the information supplied by plaintiff about her previous employment (Tr. 75-80), the ALJ made a determination of the physical and mental demands of plaintiff's past relevant work. He then compared plaintiff's residual functional capacity with her previous employment, again with the assistance of the vocational expert's testimony. This is a proper approach. See Moses v. Barnhart, 321 F.Supp.2d 1224, 1233 (D.Kan. 2004).

Plaintiff contends that the ALJ's findings are inadequate because the job of "customer service associate" is not described in the Dictionary of Occupational Titles. Plaintiff asserts that plaintiff's work as a "customer service associate" is most comparable to the job of "order clerk" in the Dictionary of Occupational Titles, which is a sedentary, semi-skilled position. Plaintiff further contends that her previous employment as an office manager was much different from the work of an "office manager" as described in the Dictionary of Occupational Titles. Plaintiff also asserts that work as an

office manager must be performed for two to four years to be considered past relevant work.

The record supports the ALJ's conclusion that plaintiff retains the residual functional capacity to do her past job as a "customer service associate."  If, as plaintiff now argues, that job is entitled "order clerk" in the Dictionary of Occupational Titles, then the record supports the conclusion that plaintiff retains the residual functional capacity to perform the job of "order clerk" as that job exists in the national economy.  Therefore, the court rejects plaintiff's first argument against defendant's decision to deny benefits.

Plaintiff's second argument on review of defendant's decision to deny benefits is that the ALJ improperly assessed plaintiff's residual functional capacity.  Plaintiff contends that the ALJ failed to do a function-by-function assessment; failed to specify plaintiff's maximum capacity for lifting, standing, walking, sitting, pushing or pulling; and failed to explain why he rejected parts of the opinion of Dr. Smith, one of plaintiff's treating physicians.

In his written opinion, the ALJ mentioned a functional capacity evaluation done by St Francis Hospital in November 1999.  The evaluation took place after plaintiff re-experienced back discomfort when she returned to work as a packer following

back surgery.  The evaluation indicated that if plaintiff had a job where she could change positions and stretch frequently, she could perform jobs which required frequent walking, rare crawling, occasional kneeling, rare crouching, constant standing, and rare stair and ladder climbing.  Upon consideration of this evaluation, Dr. Smith concluded on November 12, 1999:  "We will consider [plaintiff] to be able to work at the light category with utilizing a cart to transfer heavy items and the ability to take frequent position changes, stretches and breaks throughout the day."  (Tr. 127).

The ALJ discussed the results of a comprehensive physical examination by Dr. Daniel Zimmerman on June 12, 2000.  Dr. Zimmerman concluded:

> Mrs. Gerhardt is capable of lifting 20 pounds on an occasional basis, 10 pounds on a frequent basis.  She should avoid frequent flexing of the lumbosacral spine and, hence should avoid frequent bending, stooping, squatting, crawling, and kneeling activities as such activities repetitively carried out or carried out over extended periods of time, would be likely to increase pain and discomfort affecting the lumbar paraspinous musculature.

(Tr. 186).

The ALJ also referred to a consultative examination by Dr. James Henderson on October 6, 2001.  The ALJ summarized Dr. Henderson's findings as follows:

> The claimant complained of discomfort in her lower back.  However, she stated that her low back pain does

8

not radiate to her extremities.  Physical examination showed decrease in range of motion of her lumbar spine without paraspinous muscle spasm.  Neurological examination was entirely within normal limits. However, diminished reflexes were noted in her right knee and absent in the right ankle.  The claimant had no difficulty getting on and off the examining table or performing heel and toe walking.  She had mild to moderate difficulty squatting and arising from the seated position.  She had moderate difficulty hopping on the right foot.  Despite the findings involving the claimant's right knee, her gait and station were stable.  Straight leg raising was normal in both the seated and supine positions.

(Tr. 16).

The ALJ reviewed the reports of Dr. Smith in March 2002. He mentioned Dr. Smith's note on March 15, 2002 that plaintiff "may return to regular duty . . . no lifting over 20 pounds (permanent), use cart for heavy transfers, ability to take frequent position changes, stretches and breaks."  (Tr. 224). The ALJ also noted Dr. Smith's medical source statement, a form where the doctor marked plaintiff's physical strength limitations.  (Tr. 219-20).  The ALJ concluded from this form that plaintiff could lift, walk, push and pull at a "light" exertional level.  (Tr. 16).  The ALJ also discussed the other limitations found by Dr. Smith:

She could never climb, crouch, or crawl.  She could only "occasionally" balance, bend, kneel and handle as that term is defined in the Regulations.  She could "frequently" reach, finger, feel and grip as defined by the Regulations.  The claimant has environmental limitations in that she must avoid exposure to vibrations, hazards and heights.  She must avoid

9

moderate exposure to extreme cold and heat, weather, wetness/humidity and dust/fumes.

(Tr. 16). The ALJ additionally acknowledged that Dr. Smith stated on the medical source statement that plaintiff might have to lie down or recline three to six times a day for one to two hours. He also discussed treatment (a cortisone shot) Dr. Smith provided for plaintiff's abnormal acromioclavicular joint in her left shoulder.

The ALJ further engaged in a discussion of plaintiff's mental status and examinations of plaintiff's mental state as well as a discussion of plaintiff's activities of daily living. (Tr. 17).

Social Security Ruling 96-8p provides guidance regarding how an ALJ should proceed in determining the residual functional capacity of a claimant. Social security rulings do not carry the force of law, but courts defer to them unless they are plainly erroneous or inconsistent with the Social Security Act. Andrade v. Secretary of Health and Human Services, 985 F.2d 1045, 1051 (10th Cir. 1993). Rule 96-8p provides that the ALJ must consider the exertional capacities of a claimant when assessing the claimant's residual functional capacity; that seven strength demands or functions (sitting, standing, walking, lifting, carrying, pushing and pulling) must be considered; and that each function must be considered separately. Rule 96-8p

also states that:

> "The RFC assessment must include a narrative
> discussion describing how the evidence supports each
> conclusion, citing specific medical facts . . . and
> nonmedical evidence . . . In assessing RFC, the
> adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work
> setting on a regular and continuing basis . . . and
> describe the maximum amount of each work-related
> activity the individual can perform based on the
> evidence available in the case record."

We believe it is significant that the ALJ said he gave "controlling weight" to the opinions of Dr. Smith to the extent that they were supported by the clinical and diagnostic findings. (Tr. 18). Dr. Smith made specific findings regarding the seven strength demands in a medical source statement he completed on March 10, 2002. (Tr. 219-20). The court believes the ALJ's thorough narrative discussion of the evidence in the record, as well as his incorporation of the findings of Dr. Smith, is sufficient to satisfy the ALJ's obligation to perform a function-by-function assessment as part of his RFC determination. It is also sufficient in our view to present a finding regarding the maximum amount of work-related activities that plaintiff can perform. We conclude that the ALJ did not decide first that plaintiff could perform "light work" before considering the separate functions which constitute the capacity to perform "light work." Rather, the ALJ considered all of the evidence, including plaintiff's maximum ability to sit, stand,

11

walk, lift, carry, push and pull and then concluded that
plaintiff could perform "light work" such as the past relevant
occupation of customer service representative.

The final part of plaintiff's second argument is that the
ALJ did not explain why he reached a different opinion than Dr.
Smith as to some of plaintiff's alleged limitations.  Dr. Smith
stated on his medical source statement that there could be a
need for plaintiff to lie down three to six times a day during
a typical 8-hour day if she suffered pain or fatigue.  The ALJ
determined, however, that this limitation was not supported by
the evidence of record - namely, the clinical and diagnostic
findings as well as plaintiff's activities of daily living.  It
is noteworthy that plaintiff was released to return to work
after her back surgery by Dr. Smith in 1998, after she re-
experienced back pain and returned to Dr. Smith in 1999, and
five days after Dr. Smith completed the medical source statement
in 2002.  We believe the evidence in the  record and the
discussion of that evidence by the ALJ supports the decision not
to give controlling weight to the statement regarding
plaintiff's alleged need to lie down.  See Castellano v.
Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th
Cir. 1994)(a treating physician's opinion may be rejected if his
conclusions are not supported by specific findings or by the

record).

Dr. Smith also listed certain environmental limitations and postural and manipulative limitations.  However, plaintiff never established that these limitations prevented her from returning to her past relevant work.  At step four, plaintiff has the burden of proving that her impairments and limitations prevent her from performing work she has done in the past.  <u>Andrade</u>, 985 F.2d at 1050; <u>Williams v. Bowen</u>, 844 F.2d 748, 751 & n.2 (10th Cir. 1988).  The record does not suggest that the environmental limitations mentioned by Dr. Smith would keep plaintiff from working as a customer service representative.

<u>Conclusion</u>

For the above-stated reasons, the decision of defendant to deny benefits is affirmed.

**IT IS SO ORDERED**.

Dated this 10th day of February, 2005 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge